UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

TYRONE EILER and
TAMMY EILER,

         Debtors.

Case No. 07-26168

Chapter 13

---

MEMORANDUM DECISION ON DEBTORS' OBJECTION TO
PROOF OF CLAIM NO. 3 OF WELLS FARGO, NA

---

This matter came before the court on the debtors' objection to the proof of claim of Wells Fargo, NA. The parties filed briefs explaining their positions and the court rendered an oral ruling on April 28, 2008, reserving the right to supplement the record in writing. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

On July 14, 2003, the debtors executed a purchase money mortgage from CTX Mortgage Co., LLC, in the sum of $88,529.00. The mortgage loan was assigned to Wells Fargo Bank. By January 2004 the debtors had fallen behind on their mortgage payments. Wells Fargo and the debtors entered into 11 separate repayment plans prior to June 22, 2006, when the debtors filed a chapter 7 petition, case no. 06-23362. Each repayment plan was breached. The debtors voluntarily entered into a reaffirmation agreement, which was filed in their chapter 7 case on July 25, 2006.

On two separate occasions following the reaffirmation agreement, Wells Fargo demanded

a lump sum catch-up payment, which the debtors failed to pay. The debtors filed this chapter 13 case on August 8, 2007. Wells Fargo Bank filed a secured proof of claim on September 5, 2007, in the amount of $102,987.35. The amount of arrearage and other charges at the time the case was filed included in the secured claim consisted of the following:

| | |
|---|---:|
| Regular Monthly Installments of $711.26 (January 2006 through May 2007) | $12,091.42 |
| Regular Monthly Installments of $778.09 (June 2007 through August 2007) | 2,334.27 |
| Late Charges | 235.94 |
| Prepetition Escrow Shortage | 668.67 |
| Prepetition Attorney Fees and Costs | 4,878.60 |
| Property Preservation Fees | 111.25 |
| Debtor Suspense | (37.37) |
| Pre-confirmation fees as of 8/28/07 | 350.00 |
| Total | $20,632.78 |

According to the affidavit attached to the proof of claim, the following sums were due and owing under the note and mortgage as of the date of the undated affidavit:

| | |
|---|---:|
| Current principal balance | $85,595.93 |
| Interest from 01/01/06-07/31/07 | 7,846.20 |
| Accumulated unpaid late charges | 173.70 |
| Escrow Advance | |
|     Real Estate Taxes | 2,147.64 |
|     Hazard Insurance | 553.00 |
|     MIP/PMI | 450.57 |
| Property Inspections | 78.75 |
| Bankruptcy Expenses | 175.00 |
| Credit: Suspense balance | (37.37) |
| Total | $96,983.42 |

ARGUMENTS

The debtors objected to the claim, arguing that the reaffirmation agreement entered into and filed in their previous chapter 7 case appeared to roll the entire deficiency into the

2

outstanding balance owed on the claim. The amount reaffirmed, including debt and all fees and costs as of the date of the agreement was $92,601.31. Monthly payments were set at $711.26, the same as required by the mortgage, with the first payment due July 30, 2006. Nothing in the reaffirmation agreement addressed any past-due payments or required that the mortgage be made current as a condition of the reaffirmation agreement. The debtors and their counsel interpreted the agreement to mean that the past-due payments were included in the amount agreed to be reaffirmed.

According to the debtors, after they received their chapter 7 discharge, Wells Fargo would not accept the payments in the amount set forth in the reaffirmation agreement and claimed the debtors were in default and needed to come up with a lump sum. The debtors would not or could not do so. After Wells Fargo filed a foreclosure action on December 5, 2006, this chapter 13 case was filed. Because Wells Fargo did not honor the payment terms set forth in the reaffirmation agreement and the terms of the agreement were sufficiently vague to lead debtors and their counsel to believe that the loan had been reinstated at the monthly payment amount in the agreement, the debtors request that the attorney's fees and other costs of foreclosure be deleted from the claim.

Wells Fargo points out that at the time the debtors entered into the reaffirmation agreement, they were still past due on their mortgage payments. After signing the reaffirmation agreement and getting their chapter 7 discharge, Wells Fargo claims the debtors entered into an additional repayment plan, which was also breached. Wells Fargo argues it is entitled to collect all monies owed as provided by the note and mortgage in this chapter 13 case under 11 U.S.C. § 1322(b)(2) and (b)(5). Neither the existence of, nor any terms expressed in the reaffirmation

agreement signed by the debtors, alters any of the terms of the note and mortgage or the arrearage that has accrued thereunder. The accrued mortgage arrearage was not adjusted, rewritten, reduced, removed or reallocated in any way by virtue of the filed reaffirmation agreement.

Because the court wanted to know if there were any additional agreements modifying the subject reaffirmation agreement, and the record was unclear in that respect, the bank was given an opportunity to supplement the record. The bank did so and argued that the actions of the parties subsequent to entering into the reaffirmation and forbearance agreements reflect the intent not to modify or alter the terms of the mortgage loan. Both parties agreed the court could decide the issue on the evidence presented.

According to the bank, the debtors' repayment history – although sporadic – comports with a reading of the reaffirmation agreement such that it did not reduce or incorporate any mortgage arrearage. A forbearance agreement entered into on May 31, 2006, which was before the reaffirmation agreement, required payments to be made in the amount of $747.91 on or before June 30, 2006, July 30, 2006, and August 30, 2006, with a lump sum payment of $7,713.90 due on September 30, 2006. No signed copy of this agreement was ever produced. The debtors tendered a post-forbearance agreement payments of $750.00 on June 27, 2006. The reaffirmation agreement was entered into on July 25, 2006, setting forth amounts due at that time, precisely $92,601.31, with payments of $711.26 per month starting July 30, 2006. The debtors then paid $747.91 on July 28, 2006, $760.00 on August 25, 2006, $730.00 on December 20, 2006, and $729.89 on January 26, 2007. As noted by the bank, the debtors never remitted the amount listed in the disclosures of Part A of the reaffirmation agreement, i.e., $711.26. The repayment schedule in the reaffirmation agreement was "as per the original note." The original

4

note provided for monthly principal and interest payments of $502.66, and the mortgage provided for the possible modification over the course of payment.

The creditor asserts it entered into a verbal repayment agreement with the debtors on September 18, 2006, which was reduced to writing on November 20, 2006. That agreement required payments to be made in the amount of $729.89 on or before December 29, 2006, January 29, 2007, and February 28, 2007, with $11,809.25 due March 29, 2007. No signed copy of this purported agreement was produced.

## DISCUSSION

Did the reaffirmation agreement change the terms of the note as it pertained to the calculation and collectability of arrearages incurred prior to when the reaffirmation agreement was entered into? This court concludes that it did. The reaffirmation agreement provided the following: (1) The amount the debtors agreed to reaffirm was $90,730.80, plus "[a]ll fees and costs accrued as of the date of this disclosure statement, related to the amount of [reaffirmed] debt," of $1,870.51, for a total of $92,601.31 (Reaffirmation Agreement Part A1, p. 1); (2) The repayment schedule was "[a]s per original note" (Reaffirmation Agreement, p. 3); and (3) "Description of any changes to the credit agreement made as part of this reaffirmation agreement: None" (Reaffirmation Agreement Part B.2, p. 6). No provisions were made in the reaffirmation agreement regarding any arrearage.

In general, "[a] reaffirmation agreement is one in which the debtor agrees to *repay all or part of* a dischargeable debt after a bankruptcy petition has been filed. ... '[A] reaffirmation agreement has the effect of reaffirming a debtor's preexisting in personam liability on the underlying obligations giving rise to the debt.'" *Matter of Duke*, 79 F.3d 43, 44 (7th Cir. 1996)

(citations omitted) (emphasis added). Other courts have noted that a reaffirmation agreement is a new contract that *renegotiates or reaffirms* the original debt. *In re Schott*, 282 B.R. 1, 7 (B.A.P. 10th Cir. 2002). A valid reaffirmation agreement thus allows a favored creditor to collect the amount reaffirmed as a personal liability without violating section 524(a)'s discharge injunction. The underlying debt is not eliminated. The reaffirmation of a debt restores the rights of the creditor in full, and permits enforcement of the debt in case of any post-reaffirmation default.

Reaffirmation agreements are subject to strict requirements and are construed in favor of the debtor. *In re Roth*, 38 B.R. 531 (Bankr. N.D. Ill. 1984), *aff'd,* 43 B.R. 484 (N.D. Ill. 1984). A reaffirmation agreement is a contract between a debtor and a creditor, to which conventional contract principles apply. *See Matter of Turner*, 156 F.3d 713, 718 (7th Cir. 1998). In construing and interpreting contracts, the bankruptcy court must look to state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979).

Under Wisconsin law, a contract may consist of several documents. *See Harris v. Metropolitan Mall*, 112 Wis. 2d 487, 334 N.W.2d 519 (1983). Generally, state cases have involved instruments *executed at the same time* between the same contracting parties in the course of the same transaction. However, one very old Wisconsin Supreme Court case, *Richardson v. Single*, 42 Wis. 40 (1877), found that a subsequent contract should be construed in connection with a previously made contract related to the same business dealing. *See also* Williston on Contracts § 30:25 (updated ed. 2007) ("Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument.").

So, under appropriate circumstances, a reaffirmation agreement and the note/mortgage

6

instruments may be construed together. That is what the court in *In re Schott*, 282 B.R. 1 (B.A.P. 10th Cir. 2002), did. In that case, the debtors believed they had paid the debt due under the reaffirmation agreement and the creditor asserted the debtors still owed approximately $3,000. The debtors requested the bankruptcy court hold the creditor in contempt for collecting a larger debt than they had reaffirmed, arguing they had not reaffirmed the debt for term life insurance they had elected to take after signing the note. The debt for life insurance had been memorialized in handwriting on the note, but there was no mention of it in the reaffirmation agreement. The debtors also objected to payment of any postpetition interest. The reaffirmation agreement had identified the amount due as $14,431.94 – the same amount shown on the creditor's proof of claim as of the date of filing – and further stated there would be 90 payments of $197.38. This multiplies out to $17,764.20, but the debtors objected to anything over the stated amount of $14,431.94. The bankruptcy court denied the motion for contempt, holding that the reaffirmation agreement incorporated the entire debt due under the note, including interest and the life insurance not mentioned in the reaffirmation agreement, and the bankruptcy appellate panel affirmed. The panel noted that a reaffirmation agreement is a new contract to pay a previous debt, and even though some of the terms of the reaffirmation agreement and the terms of the note were different, those differences did not render them ambiguous. *Id*. at 8. If provisions are in conflict, the reaffirmation agreement controls. *Id.* The court in *Schott* harmonized the terms of the original note and the reaffirmation agreement, finding that the debtor was still liable for the life insurance and interest provided for in the note and not specifically addressed in the reaffirmation agreement. The facts in *Schott* are distinguishable from the case at hand, as the amount reaffirmed by the Eilers was clearly stated, and the principles stated in *Schott*

are fully applicable here.

Clearly the subject reaffirmation agreement did not have any effect on Wells Fargo's ability to enforce its *in rem* rights in the collateral. No doubt, had the agreement purported simply to reaffirm the "balance owed pursuant to the original terms of the loan agreement," we would not have the dispute we have now. However, this reaffirmation agreement did specifically limit the extent of the debtors' personal liability on the indebtedness to $92,601.31. Lenders are certainly free to offer inducements (some lower interest rates, or extend payments, or the like), and debtors are free to waive their bankruptcy discharge, for a wide variety of economic and personal reasons. Here, the amount of the obligation was fixed, whether intentionally or not. Since the amount was quantified and detailed, without any mention of arrearage, this supercedes the general statement elsewhere in the agreement that no changes were made to the loan agreement or payment schedule. Likewise, other provisions in the note which were not specifically modified by the reaffirmation agreement remain enforceable.

The fact that the debtors may have agreed to subsequent forbearance agreements or repayment plans does not result in a modification of the required repayment terms of the reaffirmation agreement. Actually, this court is not satisfied the debtors ever made such agreements. Those forbearance agreements were never signed by the debtors, and the amounts demanded by the creditor were far in excess of the amounts it had a right to under the reaffirmation agreement and probably more than the debtors had any hope of paying. Perhaps the debtors acceded verbally to the creditors demands in order to hold them at bay, but the unreasonableness and coerciveness of the demands of Wells Fargo negate any claim of a promise by the debtors.

8

The amounts asserted as due and owing on Wells Fargo's forbearance and reaffirmation agreements were conflicting and incredibly confusing – with the ultimate effect of attempting to coerce the debtors into paying substantially more than they agreed to. The two proffered forbearance agreements demanded lump sum payments of over $7,000 and $11,000, amounts clearly not due under the reaffirmation agreement. Thus, while the claimant's actions appear on their face to be *in rem*, Wells Fargo's actions were an act to collect a debt personally from the debtors that was not due pursuant to the terms of the reaffirmation agreement. *Cf. In re Pratt*, 462 F.3d 14 (1st Cir. 2006) (creditor's refusal to release its valueless lien so that vehicle could be junked was "coercive" in its effect, and thus willfully violated the discharge injunction); *In re Kuehn*, 2007 WL 5118398, 2007 U.S. Dist. LEXIS 88191 (W.D. Wis. 2007) (creditor's withholding of debtor's transcript was "an act to collect" its debt because it was highly coercive and unquestionably designed to cause the debtor to pay her debt); *In re Schott*, 282 B.R. 1 (B.A.P. 10th Cir. 2002) (remanding the case back to the bankruptcy court for findings on whether the creditor violated the debtors' discharge order by debiting sums from the debtors' account other than the payments authorized by the reaffirmation agreement).

The debtors' objection to the claim is therefore sustained. As a sanction for Wells Fargo's violation of the discharge injunction for its attempts to collect a obligation in excess of what was due following discharge, the portion of Wells Fargo's claim consisting of attorney's fees and costs shall be denied. The amount of Wells Fargo's secured claim is $92,601.31, plus prepetition arrearages of $6,278.58, for a total of $98,879.89. The arrearage amount is based on 13 payments of $711.26 due between the reaffirmation agreement and the chapter 13 filing, less payments made during that period. The debtors are current postpetition. Any change in payment

9

Case 07-26168-mdm    Doc 42    Filed 05/14/08    Page 9 of 10

amount pursuant to the reaffirmation agreement can be made only upon adequate notice to the debtors as required in the original note.  An order sustaining the objection to the claim was previously entered.

May 14, 2008

                          Margaret Dee McGarity
                          Chief Judge, U.S. Bankruptcy Court